Judge Underwood
delivered the opinion of the Court.
t The plaintiff in error, and plaintiff in the circuit court, instituted an action of d.etinue to recover sundry slaves of the defendant. The issues were *144 formed, on pleas of no administrator,.statute of limitations,, and non deiinet. The facts were these, in 1778, Josepn Drake was killed, bv tne Indians,on the .side of the Kentucky river, near Boonshorough, in tne territory of what is now Madison county, leaving, at the time of his death, a wile and two children in the fort at Boonshorough, where he was domiciled at the time of his death, and where he left a slave named Aggy, the mother of the slaves now in controversy. Alter the death oí Drake, his widow moved to the north side of the Kentucky river, and, having formed an illicit connexion, had an illegitimate daughter, the wife of the defendant. The. widow and reputed father of the defendant’s wife contrived it so, that the slaves in contest were given to the defendant’s wife by her father. Drake’s children wete a son and a daughter. It was proved, that the son acquiesced in the defendant’s title, until shortly before his death, in 1815, when he said the slaves were in part his. There was no proof, tnat Drake’s daughter knew that she had any right to the slaves descended from Aggy, or that she ever gave any intimation that they belonged to the defendant. Irt;May, 1824, the Madison county court granted administration on the estate of Drake, to J. D. Stovall, tne present plaintiff, who, in September, 1828, instituted this suit. In the progress of the trial, tne defendant offered, as evidence, a paper .in the handwriting of C.Greenup, in these words:
“Margaret Drake, Executrix of Joseph Drake, deceased, Dr. lbs. tobacco, recording probate of deceased's estate, ... . - 40
Test, Christopher Greenup.”
This paper was proved to be in the hand-writing of said Greenup, and ihat he had many years ago acted as deputy in the clerk’s office of Fayette county. To lay the foundation for admitting the paper as evidence, the defendant was sworn, and he stated that many years ago he went to the clerk’s office of Fayette county, to get a copy of the administration of Margaret Drake, the widow of Joseph Drake, on his estase, and copies of all other papers relative to the estate of the deceased, that might there be found; that ho had copies made out, but having no money with him to pay fees, be left the copies until he should pay foi rhem,' and that upon his return for them, the office had *145 ;been destroyed by fire, and he could get no copies as íhe records were burnt. The p'laintiff’objected to’the testimony, given by the'defendant to the court, and also to the admission of tiiepaper, signed as evidence in the cause; but the objections were overruled. The court was wrong. When a party has lost a paper, he may depose as to Its loss, for the purpose of laying a foundation to introduce an inferior grade or testimony, such as to give in evidence a copy, fee, see Hammit vs. Laurence, II Marsh. 366. But wé know of no case, where the party has been received, 4o prove the existence of a fact, (such as the burning of a clerk’s office,) which must, from its nature, be presumed to be as much within the knowledge ofoth-. ers as of the party. The rule should be confined to the loss-of those papers, the custody of which belongs to the party himself, or ever which he has, or-may be .presumed to have, control. But upon the testimony of the defendant, had it been proper, still the paper signed by Greenup should haye been rejected. It has no official stamp or impress about it, which the law legxtimates as evidence of the fact, which was attemp ted tobe established by it. ine paper could only have given grounds for an inference, that administra-4ion had been granted to Margaret Drake somewhere, and another inference was to be drawn, that it was by the Fayette county court, because Greenup was -once a deputy there. Such circumstances are too light to operate as substitutes for the record, which, in the general, must be proved by itself. Besides it had been shown, that the Fayette county court had no jurisdiction to grant administration, Drake having died out of the county, and leaving all his property, that we hear of,- on the south side of the Kentucky river, across which the county of Fayette at no time extended. The court should have required, under the circumstances, some evidence to create a presumption that the Fayette county court had jurisdiction. It was too far-fetched by a string of inferences, to attempt to show, that the Fayette court had acted on the subject, and then to infer jurisdiction from their action, and thereby, to defeat the administration, granted by the Madison county court, which was supported by positive proof. But if it had been right tc admit all this proof, the court clearlv erred in refas’ *146 ing an instruction, asked by the plaintiff, and predicated upon it, which was in substance, that if tire jury found that Drake, at his death, resided at Boonsbo-rough, on the south side of the Kentucky river, with his family and all his effects, the county court of Fay-ette had nojurisdietion to grant administration on his estate, it is clear, beyond doubt, that this instruction 'should have been given by the court. It is the irresistible result of the doctrine, settled in the case of Embry vs. Miller, I Marsh. 300, and Jackson vs. Jeffries, I Marsh. 88, and III Marsh. 309.
poseofiv.tro-* duerna; inferi-pose^u’e losgofapaper.
Hule which view to the introduction timemytoda-p0se to the' loss of a Pa-peI’ *xteud8 thecustody or control of 7bhinreifPM* has,™\nay be presumed to have-
Where air in-tc6t'Ate if domiciled in a for-1 sign country, andtheredies, leaving no property in this state, no administration can be .ranted in this country on his estate.
Where a ele-eetlanlisdom-idled at his death in a foreign country, and had no property in this state, although some of his property be after-wards brought into this state, no .idudnis-tration can be granted by our courts.
Madison county had not been created, at the date of the death of Joseph Drake; and the question is made,>vhetber the grant of administration to the plaintiff is not void on that account. In the case of Embry vs. Miller, this court decided, that where an individual dying abroad, domiciled in a foreign country, did not leave property in this state at the time of his death, there could be no administration granted on his estate in this country. In such a case, the bringing of property belonging to the estate of the intestate, into the state after the intestate’s death, will not give jurisdiction, and authorize the county courts to grant administration. In such a case, according to the piinci-ples of the English law, a foreign administrator might maintain an action, ior property brought after the death of his intestate to this slate, and there can be n.o doubt of it under the statute of 1812, in behalf of non-resident executors and administrators, so that there is no necessity for granting administration, unless-the intestate is domiciled iiere, or lias property here at the time of his death. The attempt jias been made, to apply these principles to the exclusion of .the jurisdiction of the Madison county court, in this case, but we think it cannot prevail. The making of a new county, after the intestate’s death, including the domicil where the property was at the time of his death, is not the same thing as bringing property, after the death, into a county which existed at that time. If it were, the' period at which Drake was killed would present a novel subject for reflection. Then the state of Kentucky constituted but one county, of that name. In 1780, it was divided into three •counties, Jefferson, Fayette, and Lincoln,and the name of Kentucky, as applicable to a county, lost. If there *147 óe any magic in the name, as the county court of the county of Kentucky, did not grant letters of tration on Drake’s goods and chattels, it would follow, that it never can be done legitimately, unless things are brought back to the condition in whiclrthey were at Drake’s death; and it would also follow, that all-administrations upon the estates of those who died before the formation of the countiesof Jefferson, Fayette, and Lincoln, granted by these counties after their formation, are void. Such a notion is at war with the long settled practice, unreasonable, and contrary to the provisions of the statute. The principle is, that the formation of a new county gives it all the jurisdic-a tion over the territory, and the persons and property of individuals within if, both civiliter et which the old county, out of which the new one was formed, would have possessed had the new county ver been erected. There is an intimation, in the case of Lindsay’s heirs vs. McCormack, II Marshall, 230, which seems to hold out the idea, that the court of a new county would possess no authority to grant administration or probate, although the deceased person was domiciled within the bounds of the new county at his death, where administration or probate was granted at the time of the formation of the new county, and the death happened before its formation. We concur in the correctness of’ that decision upon the main question, because the will had been proved in Lincoln before Mercer county was formed. But the will had not been proved in Lincoln,.at the time of the formation of Mercer, we think Mercer would then have been the proper county in which to prove it. The first rule prescribed, by the statute designating the proper court for taking the proof of wills, “ If any testator shall'have a mansion-hou.se, or known place of residence, his will shall be proved in the court of the county wherein such mansion-house or-place residence is,” II Dig. 1244. Now,, if a person dies with his mansion-house in the bounds of a new county, but died before it was formed, and after-its formation his will is proved in the old county, then, in violation of the statute, the proof is taken by the court of the county where his mansion house -was, and not in the court of the county where the mansion-house is. Such a proceeding would be as inconvenient to the citizen, *148 as'inconsistent with the letter of the law, and (here--^ore cann°f be indulged. Thesame rules?-which point' out the proper court to receive the proof of wills, apto granfingletters of administration in cases ofin-(estates,- 1 Digest, 527.' Madison county eourt was-therefore <be proper tribunal, to grant letters of ad-ministration upon Drake’s estate, if no administration had been previously granted, by the court of some one CWKittes which embraced the domicil before the formation of Madison,
Formation of aei» county Siv.e8i.tal] the and cri-minul, over the terri' property of individuals-within it. ooúnty,oufof which it has been formed,
[fa testator bas a mansion e-0'f ^¡denee, his will shall ^ the County° wherein such ro^sion-¿n0w:.°place of residence^
Sa>ne rules, outtheprojior court to re ceivetheproof toth’egrtmling of administra-tato?s estates.
Mills, Brown, and Turner, for plaintiff; Hanson,- for. defendant.
P°r the foregoing reasons, the judgment must be re' versed with costs,, and1-the- cause remanded.for.a new trial.